UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAREN M. BEST and DANIEL BEST,

                  **MEMORANDUM & ORDER**

        Plaintiffs,

   -against-

                  06-CV-4589 (CBA)

BWIA WEST INDIES AIRWAYS LIMITED; and
"JOHN DOE" as the name of a fictitious person the
identity of which is unknown at the present time,

        Defendants.
------------------------------------------------------------X

*Richard Adam, The Adam Law Office, P.C., New York, NY, for Plaintiffs.*
*John Maggio, Stephen J. Fearon (on the brief), Condon & Forsyth LLP, New York, NY, for Defendants.*

AMON, United States District Judge:

      Plaintiffs Karen and Daniel Best originally brought this action in New York State Supreme Court, Kings County, seeking recovery for alleged injuries suffered at Port of Spain, Trinidad, a stopover on Mrs. Best's trip from the United States to Grenada. Daniel Best adds a claim for loss of society, services, and consortium. Defendant BWIA West Indies Airways, Ltd. ("BWIA") removed the action to this Court, primarily pursuant to 28 U.S.C. § 1331, as arising under a treaty of the United States, the Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, May 28, 1999 (the "Convention" or "Montreal Convention"). Fact discovery has been conducted, and BWIA has moved for summary judgment.

**I.    Background**

      The following facts are undisputed unless otherwise noted. On August 6, 2004, Mrs. Best purchased round trip tickets for air transportation departing the next day from John F.

1

Kennedy Airport in New York to Grenada, via Port of Spain, Trinidad. Although Mrs. Best booked her trip with BWIA, she was aware that her itinerary placed her on a BWIA flight from JFK to Port of Spain, and then on a flight with another carrier, LIAT, from Port of Spain to Grenada.

On August 7, 2004, Mrs. Best traveled on her BWIA flight to Port of Spain without incident and arrived at approximately 12:00 P.M. After what was apparently a planned layover, Mrs. Best attempted to check in for her 8:00 P.M. flight to Grenada, only to discover that it had been canceled. She was then placed on a subsequent LIAT flight, which was scheduled to depart for Grenada at 8:30 P.M. After re-checking her baggage, Mrs. Best boarded the flight, escorted by a LIAT employee, and sat in the seat LIAT had assigned her. Shortly thereafter, and after buckling her seat belt, an unidentified man came aboard and told Mrs. Best that she would need to exit the aircraft and that "they made a mistake." Mrs. Best apparently made further inquiry, and rather than provide her an answer, the man exited the aircraft without removing Mrs. Best.

A short time later, another man boarded the aircraft and insisted that Mrs. Best disembark immediately. BWIA claims that Mrs. Best now knows this man to have been Customs Officer Clarence Clark, but the Bests claim that, even today, Mrs. Best is unsure of Mr. Clark's official title. In any event, Mrs. Best did not disembark, saying she was tired, hungry, and needed a shower. After her refusal to comply, Officer Clark grabbed Mrs. Best and forcibly removed her from her seat. Mrs. Best was then pulled off the aircraft, down the portable staircase, and onto the tarmac, where she lay crying. Approximately six people surrounded her there, at least one of whom was a LIAT employee, Anita Telesford. Apparently, Ms. Telesford assisted Mrs. Best off the tarmac and back onto the aircraft, and she continued on her way. Neither party has offered a

reason as to why Officer Clark removed Mrs. Best from the aircraft.

Plaintiffs argue that BWIA is liable under Article 39 of the Montreal Convention and principles of common law agency for injuries suffered on the LIAT leg of the flight. Defendant contends that BWIA is not liable under that provision. For the reasons that follow, the Court concludes that defendant is correct and grants its motion.

**II.     Discussion**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). With these

principles in mind, the Court now turns to the merits of BWIA's arguments for dismissal.

The Montreal Convention "entered into force in the United States on November 4, 2003, updating and replacing the uniform system of liability for international air carriers previously established by the Warsaw Convention." In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d 447, 452 (E.D.N.Y. Oct. 25, 2007) (citing Ehrlich v. Am. Airlines Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004)).[1] As a treaty of the United States, the Convention is considered federal law for subject matter jurisdiction purposes and is the supreme law of the land. See Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 456-57 (2d Cir. 2003). By its own terms, the treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case. See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 161 (1999) ("We . . . hold that recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' . . . if not allowed under the convention, is not available at all. . . . Recourse to local law, we are persuaded, would undermine the uniform regulation of international air carrier liability that the Warsaw Convention was designed to foster."); Alitalia, 347 F.3d at 457; In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d at 453 ("[T]he Montreal Convention preempts state law claims falling within its scope.").

---

[1]The "Warsaw Convention" is a reference to the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929. Because many of the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto, the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty. See Baah v. Virgin Atlantic Airways Ltd., 473 F. Supp. 2d 591, 596-97 (S.D.N.Y. 2007). Where a provision of the Convention meaningfully departs from the parallel provision in the Warsaw Convention, such differences are noted and the Warsaw Convention case law governs only where "the equivalent provision in the Montreal Convention was substantively the same." Id. at 596.

Liability for both personal injury and damage to goods during international flight is covered by its provisions. See Montreal Convention, Art. 1, 17; Alitalia, 347 F.3d at 456. Both parties correctly concede that plaintiff's itinerary met the definition set out in Article 1(2)-(3) for "international carriage" and that the Convention controls.

With respect to compensation for personal injuries, the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Art. 17(1). By its own terms, therefore, Article 17(1) limits liability to the "carrier."

**A. Relationship Between the Carriers**

Under the Warsaw Convention and the cases interpreting it, "carrier" was construed to mean only the carrier actually conducting the transportation. The case law interpreting the Warsaw Convention established "that only the airline that actually transports the injured passenger can be held liable as 'the carrier.'" Pflug v. Egyptair Corp., 961 F.2d 26, 31 (2d Cir. 1992); see also Kapar v. Kuwait Airways Corp., 845 F.2d 1100, 1103 (D.C. Cir. 1988); Shirobokova v. CSA Czech Airlines, Inc., 376 F. Supp. 439, 442 (S.D.N.Y. 2005); Stanford v. Kuwait Airlines Corp., 705 F. Supp. 142, 143 (S.D.N.Y. 1989). Accordingly, a plaintiff seeking recovery under the Warsaw Convention could only recover for injuries from the carrier upon whose aircraft the incident occurred, whether on board or during operations related to embarking or disembarking. See Pflug, 961 F.2d at 32; Kapar, 845 F.2d at 1103 (Warsaw Convention delegates "precluded the possibility that the actual carrier for one leg of a scheduled multi-leg trip could be held liable for injuries suffered on another airline during a different leg of the trip."); Shirobokova, 376 F. Supp. 2d at 442-43; Stanford, 705 F. Supp. at 143. Moreover, the

5

initial carrier does not become liable for an injury taking place on one of the successive legs of the trip merely by virtue of the fact that the traveler purchased tickets for the entire trip through that initial carrier. See Shirobokova, 376 F. Supp. at 442-43 (no liability for Delta, the initial carrier and ticket issuer, where the alleged injury occurred on board successive carrier CSA's flight); Stanford, 705 F. Supp. at 143-44.

In circumstances where carriage is performed by "various successive carriers," the Montreal Convention provides, as did the Warsaw Convention, that liability is limited to the carrier "which performed the carriage during which the accident . . . occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey." Montreal Convention, Art. 36 ("Successive Carriage"). It is this provision that applies to the flights taken by Mrs. Best.

Based on the uncontested facts, the relationship between BWIA and LIAT is that of successive carriers. It is undisputed that BWIA sold Mrs. Best a ticket for both her travel on BWIA to Port of Spain, and her flight on LIAT from Port of Spain to Grenada. (Def.'s Ex. E, R. 56.1 Statement.) Mrs. Best received an interline release tag for her baggage to transfer the bags to the care of LIAT for the leg of her trip from Port of Spain to Grenada. (Pl.'s Ex. 1, Affirmation in Opp'n.) The Bests do not allege that BWIA expressly assumed liability for the LIAT portion of the transportation.

Plaintiffs argue that Article 36, governing successive carriers, does not apply because the Convention utilizes the word "various" in reference to successive carriers and this case involves only two airlines. Plaintiffs cite no support for this strained reading, and courts have found successive carrier relationships to exist among only two airlines. See, e.g., Shirobokova, 376 F.

6

Supp. at 442 (noting that the predecessor successive carrier provisions under the Warsaw Convention applied "[w]hen a journey involves segments on more than one carrier").

Plaintiffs' reliance on Article 39 is misplaced. Chapter 5 of the Montreal Convention, which includes Articles 39-41, extended liability to what it characterizes as "contracting" carriers for harms incurred during carriage by "actual" carriers, but excepted from that definition successive carriers.[2] See McCarthy v. Am. Airlines, Inc., No. 07 CV 61016, 2008 WL 2704515 at *2 (S.D. Fla. June 27, 2008). Article 39 provides:

> The provisions of this Chapter apply when a person (hereinafter referred to as "the contracting carrier") as a principal makes a contract of carriage governed by this Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor, and another person (hereinafter referred to as "the actual carrier") performs, by virtue of authority from the contracting carrier, the whole or part of the carriage, *but is not with respect to such part a successive carrier within the meaning of this Convention*. Such authority shall be presumed in the absence of proof to the contrary.

Montreal Convention, Art. 39 (emphasis added). Articles 40 and 41 then provide that the contracting carrier shall be liable in addition to the actual carrier in situations falling within the scope of Chapter 5.

Although Article 39 provides a basis for liability for a ticket seller that did not exist under the Warsaw Convention, by its plain language this Article does not apply to the contract of carriage in this case since, as noted, it excludes from coverage successive carriage arrangements. The relationships typically covered by Article 39 include "code share operations and operations where one carrier offers service using an aircraft and crew leased from another carrier." Article-by-Article Analysis of the Convention for the Unification of Certain Rules for International

---

[2]Article 39 derives from the Guadalajara Convention, a successor to the Warsaw Convention to which the United States was not a signatory.

7

Carriage by Air Done at Montreal May 28, 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) at Art. 39; see also Letter of Submittal from Strobe Talbott, U.S. Dep't of State, to the U.S. Senate, June 23, 2000, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734; Letter of Transmittal from President William J. Clinton, Sept. 6, 2000, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734; Statement of Jeffrey N. Shane Before the Senate Comm. on Foreign Relations, June 17, 2003.

Code sharing is an arrangement in which an airline sells a ticket under its name and code number, but the flight itself is operated by another airline. See Shirobokova, 376 F. Supp. 2d at 442 (code sharing is "an arrangement whereby a carrier's designator code is used to identify a flight operated by another carrier.") (quoting 14 C.F.R. § 257.3(c)). Pursuant to Article 39, in a code sharing relationship, the airline from which a passenger purchased her ticket (the contracting carrier) is liable for injuries suffered on the flight even though another airline was the "actual carrier."

Plaintiffs do not allege that the LIAT flight was a code share flight with BWIA, or that BWIA leased the LIAT plane and crew to offer service. In fact, Mrs. Best's itinerary and receipt indicate only the LIAT code for the Port of Spain - Grenada flight. (Def.'s Ex. 3, R. 56.1 Statement.) It is plain that the relationship between BWIA and LIAT is that of successive carriers, rather than that of actual and contracting carriers, and that Article 39 has no application to this case.

### B. Common Law Agency

For the first time at oral argument, the Bests advanced the position that LIAT acted as an agent of BWIA, and that BWIA should therefore be held liable for what occurred during the LIAT segment of the trip. The sum total of the argument comprises three lines of the transcript of oral argument where counsel stated:

> and, quite honestly, we would argue that LIAT was an agent of BWIA, that they did business together. BWIA selected LIAT. LIAT was acting on behalf of BWIA in order to complete carriage.

Oral Argument Tr. 13: 14-17, Feb. 8, 2008. As an initial matter, the argument is properly rejected for procedural reasons. Positions may not be advanced for the first time at argument on the motion. In any event, the argument has no substantive merit.

The creation of an agency relationship "requires facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." Alitalia, 347 F.3d at 462. The plaintiffs have offered no factual or legal foundation for their claim that LIAT acted as an agent of BWIA in its carriage of the plaintiff Mrs. Best on the Grenada leg of the flight. The only evidence regarding an agency agreement in the record is found in BWIA's "Conditions of Contract," which states: "An air carrier issuing a ticket for carriage over the lines of another air carrier does so . . . as its agent." (Def.'s Ex. F to R. 56.1 Statement.) This provision establishes only that BWIA was an agent of LIAT in issuing the ticket.

Moreover, Article 36 forecloses the possibility of any implied agency relationship here. It provides that, in the context of successive carriers, liability is limited to the carrier who performed the carriage except "where, by express agreement, the first carrier has assumed

liability for the whole journey." Montreal Convention, Art. 36. Plaintiffs do not contend that BWIA expressly agreed to assume liability for the entire journey. The Bests' wholly unsupported claim of an agency relationship is precisely the sort of conclusory allegation that does not, as a matter of law, give rise to a genuine dispute of material fact. Accordingly, under the Montreal Convention, the Bests are not entitled to seek compensation from BWIA. Because there is no genuinely disputed fact the resolution of which would alter this result, summary judgment is appropriate.

### III. Conclusion

For the foregoing reasons, BWIA's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for the defendant BWIA and to close this case.

SO ORDERED.

Dated: Brooklyn, NY
September 29, 2008

Carol Bagley Amon
United States District Judge